**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BAKER HUGHES INCORPORATED and BAKER PETROLITE CORPORATION | § § § § | CIVIL ACTION NO. 4:09-cv-01885 |
| Plaintiffs, | § § | |
| v. | § § | JURY TRIAL DEMANDED |
| NALCO COMPANY | § § | |
| Defendant. | § § | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**APPLICATION FOR PRELIMINARY INJUNCTION**


_/s/ John H. Barr, Jr._
John H. Barr, Jr.
Attorney-in-Charge
State Bar No. 00783605
Christopher A. Shield
State Bar No. 24046833
Andrew W. Zeve
State Bar No. 24042209

Bracewell & Giuliani LLP
711 Louisiana, Suite 2300
Houston, Texas 77002
(713) 223-2300 - Telephone
(713) 221-1212 - Facsimile

ATTORNEYS FOR PLAINTIFFS BAKER
HUGHES INCORPORATED and BAKER
PETROLITE CORPORATION

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE ARGUMENT ................................................................. 1

FACTUAL BACKGROUND ........................................................................ 2

ARGUMENT AND AUTHORITIES ............................................................ 8

    A. Success on the Merits.................................................................... 9

    B. Infringement ................................................................................ 10

    C. Validity........................................................................................ 12

    D. Irreparable Harm ......................................................................... 13

    E. Balance of Hardships................................................................... 14

    F. Public Interest ............................................................................. 15

    G. Conclusion .................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1348 (Fed. Cir. 2008)............................................ 15

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984).......... 9, 12

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).............. 9

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
     132 F.3d 701, 708 (Fed. Cir. 1997)........................................................................................ 14

*BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007)............... 10, 11

*Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) .................................. 14

*Brooktrout Inc. v. Eicon Networks Corp.*,
     No. 2-03-CV-59, 2007 WL 1730112, at *1-2 (E.D. Tex. June 14, 2007) ...................... 13

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006) ............................................ 8

*Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366. 1378 (Fed. Cir. 2006)...................... 9

*Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*,
     554 F.3d 1010, 1024 (Fed. Cir. 2009).................................................................................. 10

*Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).................... 10

*Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984) ............................. 8, 14

*MGM Well Servs. v. Mega Lift Sys., LLC*, 505 F. Supp. 2d 359, 380 (S.D. Tex 2007)............... 15

*O2 Micro International Ltd. v. Beyond Innovation Technology*,
     No. 2-04-CV-32, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007) ........................................ 13

*Phillips v. AWH Corp*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) .................................... 10

*Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1343 (Fed. Cir. 2006).................... 10

*PowerOasis, Inc. v. T-Mobile USA, Inc.* 522 F.3d 1299, 1304 (Fed. Cir. 2008)......................... 12

*Quantum Fitness Corp. v. Quantum Lifestyle Centers, L.L.C.*,
     83 F. Supp. 2d 810, 832 (S.D. Tex. 1999)........................................................................... 15

*Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985) ........................ 9

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) .................................. 8

*Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) ............... 12

*Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) .................. 12

*TiVo Inc. v. EchoStar Communications Corp.* 446 F. Supp. 2d 664 (E.D. Tex. 2006) ............... 13

*Visto Corp. v. Seven Networks*, Inc.,
     No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006) .............................. 13

*Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005) ........... 10

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2009) ........................................ 8

*Wireless Agents, LLC v. Sony Ericsson Mobile Comms.*,
     390 F. Supp. 2d 532, 535 (N.D. Tex. 2005) ......................................................................... 9

**Statutes**

35 U.S.C. § 271.................................................................................................................... 10, 15

35 U.S.C. § 282........................................................................................................................... 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| BAKER HUGHES INCORPORATED | § | |
| and BAKER PETROLITE CORPORATION | § | |
| | § | CIVIL ACTION NO. 4:09-cv-01885 |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| NALCO COMPANY | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**APPLICATION FOR PRELIMINARY INJUNCTION**

Plaintiffs Baker Hughes Incorporated ("Baker Hughes") and Baker Petrolite Corporation ("Baker Petrolite") (collectively "Baker" or "Plaintiffs") file this Memorandum in Support of their Application for Preliminary Injunction against Defendant Nalco Company ("Nalco" or "Defendant").

**SUMMARY OF THE ARGUMENT**

1.      Baker owns U.S. Patent No. 7,797,943, titled *Additives to Enhance Metal and Amine Removal in Refinery Desalting Processes* ("the '943 patent" or "Baker Patented Method"). *See* Exhibit 1, '943 Patent. The Baker Patented Method is a method for cleaning crude oil having high concentrations of calcium using the desalting processes in a refinery.   Baker has successfully operated this method for customers for over five years.  Baker's competitor, Nalco, recently began to copy the Baker Patented Method and has begun performing the Baker Patented Method for Baker's customers in an effort to take Baker's business.  Nalco is currently in a position to replace Baker at one customer's refinery, and is attempting to replace baker at other customer's refineries.  Baker's analytical testing has confirmed that the method being used by Nalco infringes the '943 patent.  If Nalco is not immediately enjoined from practicing the Baker

Patented Method, Baker will suffer immediate irreparable harm as Baker's pricing, market share, good will and industry reputation will be forever diminished. Baker will not be able to recapture these losses, and money alone will not make Baker whole. Moreover, the requested injunctive relief will maintain the status quo.

## FACTUAL BACKGROUND

2.      In 1997, Baker acquired Petrolite Corporation ("Petrolite") and merged with other Baker business activities to create the Baker Petrolite, a wholly-owned subsidiary of Baker, which provides chemical technology solutions for hydrocarbon production, transportation and processing, as well as pipeline integrity services. Exhibit 2, Marfone Aff. ¶2. Baker Petrolite and its predecessors are pioneers in the oilfield chemical industry. *See Id.* at ¶3. More particularly, Petrolite, which was acquired by Baker in 1997, has over a 100 years of expertise in desalting processes used in refining crude oil. *Id.* In fact, Petrolite invented the desalting process for refineries to clean impurities from crude oil, and more particularly the use of an electrostatic field to break an oil-water emulsion. Exhibit 3, Weers Aff. ¶3.

3.      Crude oil that is high in calcium causes problems for refineries. *Id.* The problem with high calcium crude is that the calcium, which is an alkaline earth metal, has a detrimental effect on the catalysts used in the refining process. *Id.* Indeed, high concentrations of calcium in crude oil can destroy the catalysts used in the refining of crude oil. *Id.* In 2002, Tran M. Nguyen, Lawrence N. Kremer and Jerry J. Weers, all Baker employees, determined that the best location to address the problem of the high concentration of calcium in the crude oil was at the desalting process in the refinery, which is an area of Baker's expertise. *Id.*

4.      Baker filed a provisional patent application for its new method of removing high concentrations of calcium from crude oil in August 2002, and filed a non-provisional patent application in 2003. *Id.* On March 3, 2009, the USPTO issued to Baker U.S. Patent

2

No. 7,797,943, titled *Additives to Enhance Metal and Amine Removal in Refinery Desalting Processes* ("the '943 patent" or "Baker Patented Method"). *Id.* at ¶4. The Baker Patented Method as more fully described in the '943 patent removes metals and/or amines from crude oil stream through injecting a water-soluble hydroxyacid into the wash water stream of a refinery desalting process. Exhibit 1, '943 Patent Col. 18, l. 62 to Col. 19, l. 16. The wash water mixture is then mixed with the crude oil stream to create an oil-water emulsion. *Id.* at Col. 19, l. 11. The emulsion is then demulsified using electrostatic coalescence in the refinery desalter, and the water and removed metals and/or amines are separated from the crude oil. *Id.* at Col. 19, ll. 13-16.

5.      The prosecution of the patent application for the '943 Patent ("the '943 Patent Application") before the USPTO took five and a half years. *See Id.* at Patent Cover Sheet (filed August 27, 2003, issued March 3, 2009). In fact, the patent examiner considered 39 pieces of prior art including seven patents issued to Reynolds and assigned to Chevron Research Company, U.S. Patent Nos. 4,778,589; 4,778,590; 4,788,591; 4,788,592; 4,789,463; 4,853,109 and 4,988,433 ("the Reynolds '433 patent") (collectively "Reynolds Patents"). *Id.* at Cited References; Exhibit 4, Prosecution History at March 22, 2006, Information Disclosure Statement by Applicant (examiner initialed signifying that he reviewed Reynolds Patents in accordance with MPEP § 609.01). During prosecution, the patent examiner specifically rejected the '943 Patent Application based on the Reynolds '433 patent. *Id.* at May 4, 2007, Office Action; September 21, 2007, Office Action. However, after careful review of the prior art, arguments made by Baker, and amendments to Baker's claims, the USPTO issued the '943 patent as an invention patentable over the prior art, including the Reynolds Patents. *Id.* at October 29, 2008, Notice of Allowance.

6.      On March 12, 2003, Baker made a presentation to Chevron Corporation ("Chevron") regarding a number of services offered by Baker, including Baker's ability to remove calcium from crude oil. Exhibit 3, Weers Aff. ¶4. Following the meeting, Chevron expressed interest in testing the Baker Patented Method at the Chevron Pembroke refinery in Wales ("Pembroke"). *Id.* In August 2003, Baker conducted a pilot scale test of the Baker Patented Method at Baker's Petreco facility in Sugar Land, Texas. *Id.* Prior to the test, Baker advised Chevron that Baker had a pending patent application on the Baker Patented Method, however, Baker did not disclose the chemistry involved in the Baker Patented Method to Chevron during these meetings. *Id.*

7.      In December 2003, Baker conducted a preliminary test of the environmental impact of the Baker Patented Method for Chevron at Pembroke. *Id.* at ¶5. The results of this test were presented to Chevron on January 22, 2004. *Id.* at ¶5. In February 2004, Baker provided material safety data sheets ("MSDS") identifying the chemicals used in the Baker Patented Method for the first time. *Id.* On May 10, 2004, the first full trial of the Baker Patented Method began. *Id.*

8.      At the time of Baker's commercial test at Pembroke, Nalco had an exclusive contract with Chevron to supply chemicals to the refinery. *Id.* at ¶6. Consequently, Chevron also allowed Nalco to demonstrate its competing method to remove high concentrations of calcium from crude oil at Pembroke. *Id.* Thus, after the Baker Patented Method had successfully operated and removed calcium from crude oil at Pembroke from May 10 to October 13, 2004, Nalco was allowed to demonstrate its competing process. *Id.* Within two days of the first trial use of the Nalco method at Pembroke, the Nalco method caused the desalter to fill with an emulsion that would not separate, which required a shut down of the desalting process of the

4

refinery. *Id.* Nalco was given a second chance, and during the second trial, the Nalco method again shut down the refinery operations within one day due to the desalter filling with an emulsion that would not separate. *Id.*

9.    In August 2004, Baker began providing its Patented Method to the Sunoco refinery in Philadelphia, Pennsylvania, ("Sunoco Refinery") so that the Sunoco Refinery could process high calcium crude.  Exhibit 2, Marfone Aff. ¶5; Exhibit 3, Weers Aff. ¶7.  Baker has successfully treated the high calcium crude for the Sunoco Refinery until mid-April 2009. Sometime in late 2008 or early 2009, Nalco solicited the opportunity to run a competing test at the Sunoco Refinery, which began in mid-April 2009.  Exhibit 2, Marfone Aff. ¶6.  Nalco's test at the Sunoco Refinery has been successful and has not required a shut down of the refinery. Exhibit 3, Weers Aff. ¶8.

10.    The Nalco method, as described in published articles and in Nalco's U.S. Patent No. 7,399,403 ("the Nalco Patent" or "Nalco Method"), uses polyacrylic acid derivative in an aqueous solution, and claims the use of maleic acid with copolymers to form the polyacrylic acid derivative.  Exhibit 5, Nalco Patent Abstract; Col. 7, l. 37 to Col. 8, l. 39.  To Baker's knowledge, until the 2009 Sunoco Refinery trial, no method used by Nalco to remove high concentrations of calcium ever functioned without causing a shut down of the refinery within days of the method being used.  Exhibit 3, Weers Aff. ¶8.

11.    Due to Nalco's preliminary success of its tests and offering of its method at a 35% lower price than Baker charges for the Baker Patented Method, Sunoco has extended Nalco's test and has advised Baker that when Nalco completes its extended tests in September, Nalco will replace Baker at the Sunoco Refinery as the vendor for treating high calcium crude oil.  Exhibit 2, Marfone Aff. ¶7.

12.     Baker's Senior Account Manager at the Sunoco Refinery is Gary Scott ("Scott"). In connection with his work at the Sunoco Refinery, Scott regularly collects samples from the wash water stream for analysis. Exhibit 6, Scott Aff. ¶5. On May 1, 2009, during the Nalco test at the Sunoco Refinery, Scott took one sample from the wash water stream just before the injection point previously used by Baker ("Baker Injection Point") and marked it Sample ID no. 16295. *Id.* As discussed above, Nalco is now using the former Baker Injection Point to inject the chemical identified as EC2483A. *Id.* On May 1, 2009, Scott also took two samples from the wash water stream just after the Baker Injection Point, and marked the samples as Sample ID nos. 16296 and 16297. *Id.* After taking the three samples, Scott sealed three samples and had them delivered via courier to Baker's analytical chemist, Autumn Russek ("Russek"), in Sugar Land, Texas. *Id.*

13.     Upon receipt of the samples, Russek analyzed the three samples using ion-chromatography. Exhibit 8, Russek Aff. ¶3. Russek completed her analysis on May 18, 2009. *Id.* According to Russek's analysis, the sample marked Sample ID no. 16295, "wash water w/o treatment," contained no detectable amounts of malic or maleic acids. *Id.* at ¶4. This result is consistent with prior sampling of untreated wash water obtained from the Sunoco Refinery desalting process. *Id.* Furthermore, according to Russek's analysis, the samples marked Sample ID nos. 16296 and 16297 contained 3400 and 3130 mg/L of malic acid, and less than trace amounts, 38 mg/L, of maleic acid. *Id.* These results are consistent with malic acid and the known impurities associated with commercially available malic acid. *Id.* Based on Russek's analysis, Nalco is injecting malic acid into the wash water of the Sunoco Refinery at the Baker Injection Point, and is not using a polyacrylic or maleic acid, as described and claimed by the Nalco Patent. Exhibit 3, Weers Aff. ¶8. Baker's analysis further shows that the malic acid

injected by Nalco into the wash water stream is lowering the pH of the wash water from 7.30 to 3.20 and 3.25, respectively. Exhibit 8, Russek Aff. ¶5; Exhibit 3, Weers Aff. ¶10. Malic acid is one of the specific acids described and claimed by the Baker '943 patent. Exhibit 1, '943 Patent Col. 19, l. 3. In addition, the Baker '943 patent describes and claims lowering the pH of the wash water below 6. *Id.* at Col. 19, ll. 9-10.

14.    Baker has observed the Nalco test in progress at the Sunoco Refinery, and Baker has learned that Nalco has connected a tank labeled EC2483A in the wash water stream of the desalting process for the refinery ("Nalco's Bulk Chemical Tank"). Exhibit 6, Scott Aff. ¶2. The location that Nalco's Bulk Chemical Tank is connected into the wash water stream of the Sunoco Refinery is the same location previously used by Baker to add chemicals for performing the Baker Patented Method. *Id.* Nalco has also connected into the wash water stream a corrosion inhibitor, labeled EC1417A, upstream of the bulk chemical tank EC2483A, and has connected a de-emulsifier, labeled Resolv EC2452A, into the same location that Baker previously used for the injection of its deemulsifier for performing the Baker Patented Method. *Id.* at ¶3. Like Baker's patented method, Nalco is adding the acid to the wash water, which is then mixed with the crude oil stream in the desalting process. Exhibit 3, Weers Aff. ¶10. When the wash water is mixed with the crude oil stream it creates an emulsion. *Id.* Also like Baker's patented method, Nalco is adding a de-emulsifier to the emulsion and in conjunction with the electrostatic coalescence of a commercial desalting process, the crude oil is separated from the wash water and metals including calcium. *Id.* Consequently, the method practiced by Nalco at the Sunoco Refinery infringes the '943 patent. *Id.* at ¶¶8-10; *see also* Exhibit 7, Claim Chart.

15.    In late June 2009, Sunoco informed Baker that Nalco had been selected to replace Baker at the completion of the extended Nalco test in September 2009. Exhibit 2, Marfone Aff.

¶7.  If Nalco is allowed to replace Baker at the Sunoco Refinery, Baker will be immediately and irreparably harmed due to price erosion and lost revenue for the Baker Patented Method, loss of Baker's customer for the Baker Patented Method, loss of Baker's market share, loss of Baker's goodwill with its customer, and harm to Baker's reputation in the industry. *Id.* at ¶8.  Moreover, Nalco and Sunoco are currently negotiating for Nalco to replace Baker at other Sunoco refineries based on its success at the Sunoco Refinery, which will further erode Baker's pricing, profits, and market for the Baker Patented Method. *Id.*

## ARGUMENT AND AUTHORITIES

16.    The purpose of a preliminary injunction is "to preserve the status quo pending a determination of the action on the merits." *Litton Sys., Inc. v. Sundstrand Corp.*, 750 F.2d 952, 961 (Fed. Cir. 1984).  A preliminary injunction should be granted when:

(1)    the plaintiff has a reasonable likelihood of success on the merits;

(2)    the plaintiff has suffered irreparable injury;

(3)    the balance of the hardships weigh in favor of the injunction; and

(4)    the public interest would not be disserved by the injunction.

*Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2009); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1374 (Fed. Cir. 2006) (affirming grant of preliminary injunction); *see also eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006) (holding that traditional principles of equity "apply with equal force to disputes arising under the Patent Act").

17.    The affidavits of Jerry J. Weers, Autumn Russek, Gary Scott, and Patrick Marfone, attached hereto as Exhibits "2," "3," "6," and "8," and exhibits attached to these affidavits satisfy each of the four factors.  As detailed below, Nalco is infringing at least claims 1 and 17 of the '943 patent, and claims 1 and 17 are valid and enforceable.  If Nalco is not enjoined, Baker will be irreparably harmed, its pricing and market share for the Baker Patented

Method will be eroded, and Baker's good will and reputation will be diminished. Moreover, monetary damages alone will not make Baker whole. Furthermore, Nalco should not be allowed to profit from Baker's investment of time and resources in developing the Baker Patented Method. Additionally, it is in the public interest to enforce patents to encourage others to invent and utilize the patent system. Finally, Baker is willing to post a sufficient bond as determined by the Court in support of Baker's Motion for Preliminary Injunction. Exhibit 2, Marfone Aff. ¶8. Accordingly, for the reasons set forth herein, the Court should grant Baker's requested preliminary injunction in this matter.

## A.   <u>Success on the Merits</u>

18.   To demonstrate a likelihood of success on the merits, Baker must show that it will likely prove infringement of one or more claims and that at least one of those claims is likely to withstand an invalidity challenge. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *Wireless Agents, LLC v. Sony Ericsson Mobile Comms.*, 390 F. Supp. 2d 532, 535 (N.D. Tex. 2005). An issued patent is presumed valid, and "the burden of persuasion to the contrary is and remains on the party asserting invalidity." *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985); *Impax Labs., Inc. v. Aventis Pharms., Inc.*, 468 F.3d 1366, 1378 (Fed. Cir. 2006); 35 U.S.C. § 282 ("A patent shall be presumed valid."). Baker understands that Nalco is likely to contend that the '943 patent is invalid, not infringed and unenforceable. Nalco, however, must bring forth more than a mere rehashing of the prosecution history to allege that the '943 patent is invalid, because the USPTO is presumed to have competently performed its tasks during patent prosecution. *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) ("When an attacker simply goes over the same ground travelled [sic] by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent.") (emphasis original).

## B.      Infringement

19.     To prove infringement by Nalco, Baker must show that the accused Nalco method meets each claim limitation either literally or under the doctrine of equivalents. *See, e.g., Planet Bingo, LLC v. GameTech Int'l, Inc.*, 472 F.3d 1338, 1343 (Fed. Cir. 2006); *Warner-Lambert Co. v. Teva Pharms. USA, Inc.*, 418 F.3d 1326, 1340 (Fed. Cir. 2005) (citing *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys.*, 347 F.3d 1314, 1324 (Fed. Cir. 2003)). Furthermore, the Federal Circuit has repeatedly held that the claim language defines the scope of a patent's claims. *See, e.g., Phillips v. AWH Corp*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) ("It is a bedrock principle of patent law that [the] claims of a patent define the invention to which the patentee is entitled the right to exclude."). The specification and prosecution history, i.e., the intrinsic evidence, are the best guides to claim scope if there is legitimate disagreement over the scope of the claims. *See Id.* at 1314. Moreover, claim terms that can be readily understood by one skilled in the art or a lay juror do not need construction. *See id.*

20.     A patent may be infringed directly or indirectly. *See* 35 U.S.C. § 271(a)-(c). "Direct infringement is a strict-liability offense, but it is limited to those who practice each and every element of the claimed invention." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007). Indirect infringement can be either through inducing or contributing to the infringement by another, but requires specific intent or knowledge. *Id.* To prove indirect infringement, a plaintiff must also prove that there is a direct infringer. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004). More specifically, inducing infringement requires that the defendant induced or "possessed the specific intent to encourage another's" direct infringement. *Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part)). Contributory infringement requires the sale of

a product, material or composition with the knowledge that the sold product, material or composition is without substantial non-infringing uses. *BMC Resources*, 498 F.3d at 1381.

21.    Based on Baker's chemical analysis and observations, Nalco is directly infringing at least Claims 1 and 17 of the '943 patent, and no construction of claim terms is need by the Court. Exhibit 3, Weers Aff. ¶¶8-11.  A claim chart is attached as Exhibit 7.  As detailed in the attached claim chart, Nalco is performing, and/or inducing or contributing to the performance of each claimed step or limitation of the Baker Patented Method, and, therefore, Nalco is infringing at least claims 1 and 17 of the '943 patent.

22.    For the purpose of argument, to the extent that Nalco is not directly infringing claims 1 and 17 of the '943 patent, Nalco is indirectly infringing Claims 1 and 17 by inducing and/or contributing to the direct infringement by the Sunoco Refinery.  First, Nalco is inducing infringement at the Sunoco Refinery by providing chemicals for performing the Baker Patented Method and connecting Nalco's Bulk Chemical Tank into the wash water of the desalting process of the refinery.  Not only is Nalco aware of the '943 patent, having unsuccessfully competed in head-to-head trials with the Baker Patented Method in the past, but also the use of malic acid, a chemical specifically claimed in the '943 patent, and the copying of the Baker Patented Method at the Sunoco Refinery evidence Nalco's intent to induce infringement of the '943 patent. Second, Nalco's connection of Nalco's Bulk Chemical Tank containing malic acid into the wash water stream of the Sunoco Refinery desalting process contributes to the infringement of the '943 patent, because there is no substantial non-infringing use of malic acid in the desalting process of the Sunoco Refinery.  Exhibit 3, Weers Aff. ¶11.  To Baker's knowledge, Nalco has wrongfully assured Sunoco that the Nalco method does not infringe the '943 patent.  Exhibit 2, Marfone Aff. ¶7.

23.     Because Nalco is infringing at least claims 1 and 17 of the '943 patent, and no credible non-infringement argument can be made by Nalco, the Court should issue the Preliminary Injunction requested.

**C.      Validity**

24.     Patents are presumed valid. 35 U.S.C. § 282.  Indeed, a "patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). Furthermore, because of this presumption, an alleged infringer who asserts that a patent is invalid must prove invalidity by clear and convincing evidence. *See, e.g., Technology Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (citations omitted).  Moreover, the alleged infringer can not merely rehash the prosecution history to challenge validity. *See Am. Hoist & Derrick Co.*, 725 F.2d at 1359.  As the Federal Circuit explained in *PowerOasis, Inc. v. T-Mobile USA, Inc.* :

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co.*, 725 F.2d at 1359). Therefore, to raise a substantial question of validity using any piece of prior art cited or reviewed by the patent examiner during prosecution requires an alleged infringer to overcome two presumptions. *Id.*  The first presumption is that the patent is valid, and the second presumption that the USPTO properly performed its function in reviewing the patent before issuing it. *Id.*

25.     Moreover, the '943 Patent Application was subjected to five and a half years of examination in the USPTO.  Thirty-nine pieces of prior art were reviewed by the examiner,

including, but not limited to, the seven Reynolds Patents.  The '943 Patent issued over the prior art and no substantial question of validity can be sustained by Nalco.

**D.**     **Irreparable Harm**

26.     As set forth in the Affidavit of Patrick Marfone, President of Baker Petrolite, Nalco's continued use of the Baker Patented Method will result in immediate loss of business to Baker and immediate irreparable harm to Baker's goodwill, revenue, market share, reputation and price for the Baker Patented Method.  Moreover, Nalco is representing to the Sunoco Refinery, Baker's customer, that Nalco has its own non-infringing method for removing calcium from crude oil in the Sunoco Refinery desalting process.  Exhibit 2, Marfone Aff. ¶7.  Baker's observations and analysis has confirmed that Nalco is not using the Nalco Method at the Sunoco Refinery.  Nalco's infringement of the '943 patent will cause Baker to lose its existing customers and reputation for the Baker Patented Method.  Irreparable harm may be established when the litigants are direct competitors and continued infringement results in loss of market share in a way that cannot be adequately accounted for with money damages. *See Visto Corp. v. Seven Networks*, Inc., No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006); *TiVo Inc. v. EchoStar Communications Corp.* 446 F. Supp. 2d 664 (E.D. Tex. 2006) (reversed, in part, on other grounds in 516 F.3d 1290 (Fed. Cir. 2008)) (irreparable harm existed "because 'the availability of infringing products leads to a loss of market share'"); *see also O2 Micro International Ltd. v. Beyond Innovation Technology*, No. 2-04-CV-32, 2007 WL 869576 (E.D. Tex. Mar. 21, 2007)(fact of being direct competitors "weighs heavily" in irreparable harm analysis); *Brooktrout Inc. v. Eicon Networks Corp.*, No. 2-03-CV-59, 2007 WL 1730112, at *1-2 (E.D. Tex. June 14, 2007) (irreparable harm existed where patentee and accused infringer were competitors so infringement caused loss of market share and damages were an inadequate proxy for injunctive relief).

27.     Nalco has failed to compete legitimately with Baker, and is now copying the Baker Patented Method in an effort to capture Baker's customers, market share, and revenue.  In the process, Nalco is eroding Baker's pricing and market share, costing Baker revenue, and diminishing Baker's reputation.  Unless enjoined, Baker will be irreparably harmed and cannot be sufficiently compensated by monetary damages.  Exhibit 2, Marfone Aff. ¶8-9.

**E.      Balance of Hardships**

28.     The balance of hardships favors Baker.  Baker has expended significant time and resources in researching, developing and obtaining a patent for the Baker Patented Method. Moreover, granting an injunction will maintain the status quo as Baker and not Nalco, will continue to furnish the Baker Patented Method to the Sunoco Refinery. *Litton Sys*, 750 F.2d at 961 (the purpose of a preliminary injunction is to maintain the status quo).   Furthermore, although an injunction is not likely to put Nalco out of business, even if an injunction were to have the effect of putting Nalco out of business it would not be improper to issue the injunction. *See Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 708 (Fed. Cir. 1997) (stating that harm to a company for infringing another's patent is not relevant because the company does not have the right to infringe the patent of another). Moreover, the Federal Circuit has consistently held that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (*quoting Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2 995, 1003 n.12 (Fed. Cir. 1986).  Thus, the balance of hardships favors Baker, because Nalco should not be rewarded for copying Baker's Patented Method after failing to develop a non-infringing method of its own.

### F.     Public Interest

29.     The public interest favors granting a preliminary injunction in this case, because it is in the public interest to enforce patents to encourage others to invent and utilize the patent system. Baker has properly sought and been granted a patent on the Baker Patented Method, and Baker is entitled to the Court's protection of the '943 patent. *See* 35 U.S.C. § 271 (whoever utilizes a patent during the patents term without authorization infringes the patent). Moreover, the public interest will be served by issuing the preliminary injunction requested by Baker, because the "public interest is best served by protecting patent rights and enforcing the applicable laws." *MGM Well Servs. v. Mega Lift Sys., LLC*, 505 F. Supp. 2d 359, 380 (S.D. Tex 2007) (citing *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006)); *see also Quantum Fitness Corp. v. Quantum Lifestyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999) (holding that the "public interest is always served by requiring compliance with Congressional statutes"). Furthermore, the Federal Circuit has consistently held that "absent any other relevant concerns … the public is best served by enforcing patents that are likely valid and infringed." *See, e.g., Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1348 (Fed. Cir. 2008).

### G.     Conclusion

30.     The facts set out above establish that Nalco's use of the Baker Patented Method to compete with Baker is causing irreparable injury to Baker. Moreover, Baker is likely to succeed on the merits of its claims; the balance of hardships favors enjoining Nalco's further use of the Baker Patented Method; and granting such an injunction will serve the public interest and promote others to invent and utilize the patent system. Consequently, the requested Preliminary Injunction should be granted, and Nalco should be enjoined from:

    a)  practicing or performing any method for cleaning crude oil using the desalting

        processes in a refinery in the United States that:

b)  adds an effective amount of a composition to the wash water of a refinery desalting process to transfer metals and/or amines from a crude oil phase or stream to a water phase or stream comprising at least one water-soluble hydroxyacid selected from the group consisting of glycolic acid, gluconic acid, $C_2$-$C_4$ alpha-hydroxy acids, malic acid, lactic acid, poly-hydroxy carboxylic acids, thioglycolic acid, chloroacetic acid, polymeric forms of the above hydroxyacids, poly-glycolic esters, gylcolate ethers, and ammonium salt and alkali metal salts of these hydroxyacids, and mixtures thereof,

c)  where the pH of the wash water stream is lowered to below a pH of 6,

d)  where the addition of the wash water stream to the crude oil stream forms an emulsion, and

e)  where the emulsion is then resolved or demulsified into a crude oil and water streams using electrostatic coalescence, where at least a portion of the metals and/or amines are transferred to the water stream.


Respectfully submitted this 23rd day of July, 2009.


                                          /s/ John H. Barr, Jr.
                                          John H. Barr, Jr.
                                          Attorney-in-Charge
                                          State Bar No. 00783605
                                          Christopher A. Shield
                                          State Bar No. 24046833
                                          Andrew W. Zeve
                                          State Bar No. 24042209

                                   Bracewell & Giuliani LLP
                                   711 Louisiana, Suite 2300
                                   Houston, Texas 77002
                                   (713) 223-2300 - Telephone

(713) 221-1212 - Facsimile

ATTORNEYS FOR PLAINTIFF BAKER
HUGHES INCORPORATED and BAKER
PETROLITE CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been
forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure
on the 23rd day of July, 2009, and has been served on Defendants' registered agent.

*/s/ John H. Barr, Jr.*
John H. Barr, Jr.