# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| BAKER HUGHES INCORPORATED, and<br>BAKER PETROLITE CORPORATION | Case No. 4:09-cv-01885 |
| Plaintiffs, | Hon. Kenneth Hoyt<br>Presiding Judge |
| v. | |
| NALCO COMPANY, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION ON REMAND

Defendant Nalco Company ("Nalco") hereby opposes the Motion on Remand for Additional Findings of Fact and Entry of Preliminary Injunction (Dkt. No. 50; "Motion on Remand") filed by Plaintiffs Baker Hughes Incorporated ("Baker Hughes") and Baker Petrolite Corporation ("Baker Petrolite"; collectively "Baker"), and moves the Court to deny Baker's Motion for Preliminary Injunction.

## I.      ARGUMENT

After leading this Court astray once, Baker takes it a step further by brazenly putting words into the Court's mouth. *See In re Wisconsin Steel Co*., 48 B.R. 753, 763 (N.D. Ill. 1985) ("A judicial opinion is supposed to express the thinking of the judge, and the analysis, emphasis and choice of words are important for that reason. There is no point in a lawyer writing an opinion, because to put words in the mouth of the judge is to defeat the purpose of communicating the judge's independent thoughts.").

Nalco was forced to appeal the September 11, 2009 Preliminary Injunction Opinion because Baker convinced this Court to unleash the "drastic and extraordinary remedy of a preliminary injunction" based on a patent of suspect validity and an infringement theory at war with settled patent law.  The Federal Circuit immediately stayed the injunction at Nalco's request and subsequently vacated the preliminary injunction *before* Nalco could even file its Appeal Brief.[1]

Nalco appealed the Opinion because it included a series of legal errors induced by Baker's arguments and misstatements:

- Baker persuaded the Court to forgo claim construction even though the parties disputed the scope and meaning of claim terms that were pivotal to Nalco's invalidity and infringement defenses.

- Baker cited *Titan Tire*, but misled the Court when it stated that Nalco must prove its invalidity contentions by clear and convincing evidence despite the Federal Circuit's express ruling in *Titan Tire* that an alleged infringer need not prove invalidity by clear and convincing evidence at the preliminary injunction stage.

- Baker's erroneous arguments regarding the teachings of the Reynolds patent caused the Court to analyze Reynolds as an obviousness reference instead of an anticipatory reference

- Baker's analysis of Nalco's invalidity contentions led the Court to ignore Nalco's prior art obviousness combinations.

- Baker trivialized the extremely restrictive nature of the "consisting of" transitional phrase despite the fact that the Patent Office only allowed the Asserted Claims after mandating Baker to narrow their scope.

---

[1]    Baker attempts to force the Court to incorrectly base an amended opinion and order on the premise that "the Federal Circuit vacated and remanded the Preliminary Injunction Order to the Court for this Court to make specific findings regarding any irreparable harm." (Dkt. No. 50, Ex. C at p. 3).  The Federal Circuit stated that this Court "*may*, if it chooses, issue a new preliminary injunction accompanied by *adequate* findings and conclusions.  We do not address the parties' other arguments at this time." (Dkt. No. 50, Ex. B at p. 3) (emphasis added).  Notably, the Federal Circuit did not address Nalco's other arguments and did not state that a simple rewrite of the Opinion that includes findings on irreparable harm would survive appeal.  (*Id.*).

By now playing the role of judge, Baker attempts to hide the indefensible errors underlying the case it presented to the Court.  For example, Baker explicitly assured this Court that "the burden on Nalco is and remains one of proving invalidity by ***clear and convincing evidence***."  (Dkt. No. 19 at pp. 9-10) (emphasis added).  This Court adopted Baker's argument and based its validity analysis on the clear and convincing standard.  (Dkt. No. 35 at p. 10 ("The Court finds that Nalco has not overcome the presumption of the validity of the '943 patent by ***clear and convincing evidence***.") (emphasis added)).  Baker knows the standard in the Court's Opinion was incorrect and would be reversible on appeal.  (*See* Baker's revision of the standard to be applied without comment in its amended proposed order, Dkt. No. 50, Ex. C at p. 13).  But, without explaining that it misled the Court in the first place, Baker now attempts to correct the validity standard applied by the Court without revealing how the corrected standard would impact the Court's conclusions.  (Dkt. No. 50, Ex. C at p. 13).  Indeed, Baker's proposed order still misapplies *Titan Tire* because it fails to analyze whether Baker overcame the substantial questions of invalidity raised by Nalco (which, in fact, Baker failed to do).  *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377-80 (Fed. Cir. 2009).

In addition to backpedaling and covering up the erroneous arguments that Nalco called out in its Motion to Stay (Dkt. 50, Ex. A), Baker attempts to supplement the Court's Opinion with still more erroneous findings.  At least five of Baker's proposed amendments to the Court's Opinion would constitute clear error:

1.      Baker's proposed order requires the Court to erroneously find that "Nalco offers no explanation as to why its proposed claim constructions are necessary."  (Dkt. No. 50, Ex. C at p. 7).  This specious "finding" ignores Nalco's preliminary injunction papers as well as the clear language of Nalco's Motion to Stay, which Baker attaches to its Motion on Remand.

Specifically, Nalco argued that failure to construe the claims, particularly "emulsion" and "consisting of," "infected the court's analysis of infringement and invalidity." (Dkt. No. 50, Ex. A at pp. 8-11, 14). For example, Baker has never offered a construction for "emulsion," yet now urges the Court to erroneously find that Reynolds "does not disclose or teach at least the use of an emulsion." (Dkt. No. 50, Ex. C at p. 12). How can this Court determine whether Reynolds discloses an "emulsion" if it has not defined that term? All along, Nalco has argued that an emulsion is a "mixture of two immiscible liquids." (*See*, *e.g.*, Dkt. No. 18 at p. 4; Dkt. No. 18, Ex. 2 at p. 2; Dkt. No 33 at p. 2). Reynolds discloses that the wash water and the crude oil are "intimately and thoroughly mixed." (*See* DX5 at 2:5-12, 59-63).[2] Thus, Reynolds discloses an emulsion under Nalco's proposed construction and failure to construe the claims – as Baker once again urges – would be reversible error. Baker's insistence that claim construction is unnecessary is merely an attempt to blind the Court to Reynolds' disclosure of an emulsion.

2.      After Baker misleadingly characterizes Nalco's claim construction arguments, it then suggests the Court erroneously find that "because the claim terms are readily understood by the Court in light of the claim language, patent specification, and prosecution history, the Court agrees with Baker Hughes that no construction is necessary at this time." (Dkt. No. 50, Ex. C at p. 7). Yet the Federal Circuit requires district courts to tentatively construe disputed claim terms when the parties fundamentally dispute the scope of the claim. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008) (a district court's "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning'" is erroneous if the "term's 'ordinary' meaning does not resolve the parties' dispute"); *see also Shuffle Master v.*

---

[2]     For the Court's convenience, Nalco's relevant trial exhibits (*i.e.*, DX__) are attached to this response. For example, the Reynolds '463 Patent is attached hereto as DX5. Also, references to patents are by column and line numbers. Thus, column 1, lines 2-8 would be referenced as 1:2-8.

*VendingData Corp.*, 2007 U.S. Dist. LEXIS 14655, at *6 (D. Nev. 2007) ("although a district court need not undertake a comprehensive claim construction in the course of issuing a preliminary injunction, it must nonetheless 'provide some form of claim construction, even if abbreviated, preliminary, or tentative.'") (quoting *Shuffle Master, Inc., v. VendingData Corp.*, No. 05-1203, 2005 WL 3529124 at **7 (Fed. Cir. Dec. 27, 2005)).

3.      Baker also misstates fundamental patent damages rules and makes no proposed findings to support its conclusion that money damages are inadequate. (Dkt. No 50, Ex. C at pp. 9-12).  First, regarding the alleged "pull-through" damages, Baker fails to recognize that "lost profits cannot be recovered on unpatented items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage." *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009) (reversing "award of lost-profit damages on pull-through products").  Second, Baker fails to inform the Court that damages attributable to price erosion are readily calculable and do not constitute irreparable harm. *See Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) (reversing preliminary injunction based on price erosion: "neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial").  Third, Baker's proposed order provides no legal basis for the Court to find any irreparable harm.  Even assuming pull-through damages and price erosion exist, Baker's proposed order never explains why money damages would not adequately remedy these losses. *Id.*; *see also Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995) (*en banc*). Indeed, Baker's entire irreparable harm theory rests on the admittedly speculative testimony of its own vested witness. *See Nutrition 21,* 930 F.2d at 869 (irreparable harm cannot be based on

5

"speculation" and "attorney argument," instead "evidence and reasoned analysis . . . should be proffered").

4.      Moreover, Baker urges the Court to erroneously find – without citation to the record – that "Nalco's expert and employees testified that the addition of chemicals to crude oil yields **unpredictable results**" despite Nalco's expert and employee Robert Reynolds' explicit testimony that addition of "the acids previously disclosed in Hickok and Strong," including malic and lactic acids, to crude oil "would be able to **predictably improve** the metals transfer from hydrocarbon to the water phase." (Compare Dkt. No 50, Ex. C at p. 12 with Dkt. No. 40, Tr. at 369:23-370:3) (emphasis added).

5.      Through its proposed opinion and order. Bakeralso attempts to add Baker Petrolite as a party to the injunction even though the Court explicitly restricted its Opinion to Baker Hughes.  Baker, without any supporting citation, essentially denies Nalco's outstanding Motion to Dismiss (Dkt. No 50, Ex. C at p. 2; *see also* Dkt. No. 16).  Baker has continually downplayed Nalco's Motion to Dismiss, but the simple fact remains that Baker cannot confer standing on Baker Petrolite where none exists.

Throughout these proceedings, Baker has avoided the actual facts and relevant legal standards and instead weaves a factually incorrect and irrelevant tale.  The most egregious example is Baker's contention that Nalco simply copied its method.  Nalco, however, developed its malic acid process on its own.  The superior performance of this method, over Baker's more costly glycolic acid method, not only caused Baker to file this misguided lawsuit, but led Baker on information and belief to seek its own supply of malic acid to copy Nalco's process. (*See* Dkt. 40, Tr. at 312:4-314:17).

Baker touts the five-plus year prosecution of the '943 Patent as demonstrating the

strength of the patent, but never mentions the patent was only allowed after Baker was forced to extremely limit the claim scope.   Baker now ignores the restrictive "consisting of" claim language to use its narrow patent as a broad sword to stifle competition.

Baker also pushes its reputation as an innovator, yet its primary inventor admits the technology at issue is a century old.   Put simply, Baker invented nothing – its patented technology simply incorporates the prior art.   Indeed, with no discovery and an accelerated time schedule, Nalco found one anticipatory reference and at least two obviousness combinations. Nalco's anticipatory reference – Reynolds – discloses the prior art process that Nalco is currently practicing.  (*See*, *e.g.*, Dkt No. 40, Tr. at 405:10-406:14).

Enough is enough.   To address the real issues head-on,   Nalco requests the Court to revisit the Baker-induced errors related to: (A) claim construction; (B) validity of the asserted claims; (C) non-infringement; and (D) irreparable harm.   (*See* Sections I.A-D below).   The evidence and law overwhelmingly support Nalco's argument that a preliminary injunction should not issue.   Additionally, the preliminary injunction proceedings have forced the parties to prepare their evidence and develop their legal theories.   Thus, in the interest of judicial economy, Nalco requests the Court to deny the preliminary injunction and set an expedited claim construction hearing and trial date.

### A.     The Court Must Conduct Claim Construction before it Rules on Baker's Preliminary Injunction Motion.

"[A] correct claim construction is almost always a prerequisite for imposition of a preliminary injunction." *See Chamberlain Group, Inc. v. Lear Corp.*, 516 F.3d 1331, 1340 (Fed. Cir. 2008).   "The court must properly interpret the claims, because an improper claim construction may distort the infringement and validity analyses."   *Amazon.com*, 239 F.3d at 1352; *see also Sofamor Danek Group v. Depuy-Motech*, 74 F.3d 1216, 1220 (Fed. Cir. 1996)

("Likelihood of success on infringement thus depends on the meaning of disputed claim terms"). A district court's reliance on an erroneous claim construction in granting injunctive relief – or, as here, failure to construe the claims at all – constitutes clear legal error.  *See Chamberlain,* 516 F.3d at 1340 ("Thus, the district court's erroneous construction of the disputed terms requires this court to vacate the preliminary injunction."); *see also Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1382 (Fed. Cir. 2006) ("Because the district court erred in its claim construction, this court vacates the district court's grant of [plaintiff's] motion for a preliminary injunction and remands for action consistent with the opinion.").

The Federal Circuit has instructed that courts must construe the claim terms when the parties fundamentally dispute the claim's scope.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1363 (Fed. Cir. 2008) ("When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it.").  In *O2 Micro,* the Federal Circuit made clear that a district court's "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning'" is erroneous if the "term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* at 1361.  Specifically, if the parties dispute the effect of the term on the scope of the claim, the district court must construe it.  *Id.*

Baker attempts to insert into the Court's Opinion: "Because the claim terms are readily understood by the Court in light of the claim language, patent specification, and prosecution history, the Court agrees with Baker Hughes that no construction is necessary." (Dkt. 50, Ex. C at 7-8).[3]  The parties, however, fundamentally disagree on whether the scope of the term

---

[3]     Rather than attempting to understand the meaning and scope of the disputed terms on its own, the Court must determine the meaning of the terms as understood by a person of ordinary skill in the art at the time of the invention.  *See* Phillips v. AWH Corp., 415 F.3d 1303, 1312-19 (Fed. Cir. 2005).  Here, two companies with considerable skill in the art cannot agree on claim term meanings and scope.  Thus, the Court's duty to the parties and the public is to entertain Baker and Nalco's claim construction arguments and to rule on

"emulsion" includes certain methods described in the prior art and whether "consisting of" limits the scope of the Asserted Claims to four specific steps.  (Compare Dkt. No. 18 at pp. 4-5 with Dkt. No. 19 at pp. 5-6).   The parties' divergent views require the Court to determine the meaning and scope of the Asserted Claims.  *See O2 Micro*, 521 F.3d at 1361-63.

  **B.**  **The Court Should Deny Baker's Motion Because Nalco Raises a Substantial Question of Validity.**

  Despite Baker's failure to comment on its proposed changes to the Court's Opinion, it seemingly agrees that the Court should not hold Nalco to a clear and convincing burden regarding validity and instead should follow the precedent in *Titan Tire*.  (Dkt. No. 50, Ex. C at p. 13).  In *Titan Tire*, the Federal Circuit went to great lengths to explain the burdens on each of the parties to a preliminary injunction action regarding validity.   *Id*. Specifically, the Court rejected the notion that an accused infringer must show invalidity by clear and convincing evidence and even shifted the burden to the patentee where the accused infringer presented prior art raising a substantial question of validity:

> Instead of the alleged infringer having to persuade the trial court that the patent is invalid, at this stage it is the patentee, the movant, who must persuade the court that, despite the challenge presented to validity, the patentee nevertheless is likely to succeed at trial on the validity issue.

*Id*. at 1377.  The Court also instructed:

> [I]f the trial court concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit, it necessarily follows that the patentee has not succeeded in showing it is likely to succeed at trial on the merits of the validity issue.

*Id*. at 1379.

  With *Titan Tire* in mind, the Court should revisit whether Nalco's invalidity defenses

---

the proper meaning and scope of those terms as understood by a person of ordinary skill in the art.  *Id*.

raised substantial questions concerning the '943 Patent's validity and, if so, whether Baker could overcome them at trial.

### 1. Baker Invented Nothing.

Baker admits that three of the four steps the Asserted Claims were well known in the prior art. The chart below illustrates the scope and content of the prior art using Baker Hughes' admissions (emphasis added below):

| Claim 1 | Baker Admissions |
|---|---|
| A method of transferring metals and/or amines from a hydrocarbon phase to a water phase in a *refinery desalting process* consisting of: | The refinery desalting process is a hundred years old; it is a "*standard desalting process that everybody performs.*" (Dkt. No. 39, Tr. at 37:9-11, 40:1-41:19). |
| **Step 1:**<br>adding to a wash water, an effective amount of a composition to transfer metals and/or amines from a hydrocarbon phase to a water phase comprising at least one water-soluble hydroxyacid selected from the group consisting of *glycolic acid*, gluconic acid, $C_2$-$C_4$ alpha-hydroxy acids, *malic acid*, *lactic acid*, poly-hydroxy carboxylic acids, thioglycolic acid, chloroacetic acid, polymeric forms of the above hydroxyacids, poly-glycolic esters, glycolate ethers, and ammonium salt and alkali metal salts of these hydroxyacids, and mixtures thereof; | Adding an acid to wash water was a known process. (*Id.* at 123:19-22)<br>*Baker alleges the only novel feature of the Asserted Claims is the identity of "specific acids" added to the wash water.* (*Id.* at 105:9-13; *see also id.* at 126:15-24). |
| **Step 2 (well known):**<br>lowering the pH of the wash water to 6 or below, before, during and/or after adding the composition; | Using an acid to lower the pH of the wash water to 6 or below was known. (*Id.* at 123:19-124:3). |

| Claim 1 | Baker Admissions |
|---|---|
| **Step 3 (well known):**<br><br>adding the wash water to crude oil to create an *emulsion*; | "In every desalter that I've ever seen . . . there's always a mix valve to create the oil/water *emulsions* that basically give you the good contact of the oil and water phases." (*Id.* at 70:14-71:1). |
| **Step 4 (well known):**<br><br>and resolving the emulsion into hydrocarbon phase and an aqueous phase using *electrostatic coalescence*, where at least a portion of the metals and/or amines are transferred to the aqueous phase. | "In every desalter that I've ever seen . . . there is always an *electrostatic field*." (*Id.*). |
| **Claim 17 (well known):**<br><br>The method of claim 1 where the composition additionally comprises at least one additional component selected from the group consisting of a water or alcohol solvent, a corrosion inhibitor, a *demulsifier*, a scale inhibitor, metal chelants, wetting agents and mixtures thereof. | "In every desalter that I've ever seen there's always a *demulsifier*." (*Id.*). |

Baker, therefore, admits that the majority of the Asserted Claims is found in the prior art and alleges the ***only*** novel feature is the identity of "specific acids" added to the wash water.  (*Id.* at 105:9-13; see also *id.* at 126:15-24)  At least three of these specific acids, however, are found in the prior art and, as described below, glycolic acid, malic acid and/or lactic acid are found in the Reynolds, Strong and/or Hickok patents.  Baker, therefore, invented nothing.

### 2. Reynolds Anticipates the '943 Patent.

Nalco asserts the Reynolds patent as an anticipatory reference to the '943 Patent.  The Court, however, has yet to analyze the likelihood that Reynolds anticipates the '943 Patent or whether Reynolds creates a substantial question of validity.  *See Titan Tire,* 566 F.3d at 1379.

While the court conceded that Reynolds discloses every step of the asserted claims, it found that reference "teaches away" from the claimed invention and is not obvious.  (Dkt. No 35

at p. 9).  The Court, however, preformed an obviousness analysis regarding Reynolds, ***not*** an anticipation analysis.  (*Id.*).  The law is clear that teaching away and motivation to combine do not apply to an anticipation analysis.  *Celeritas Techs. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) (finding the asserted patent invalid despite argument that the anticipatory reference "teaches away"; "the question whether a reference 'teaches away' from the invention is inapplicable to an anticipation analysis.").

The Court also dismissed Reynolds as invalidating prior art on the incorrect assumption that Reynolds does not teach an "emulsion," a claim term it did not construe despite Nalco's insistence.  (Dkt. No 35 at p. 9).  Nalco repeatedly argued that an emulsion is a "mixture of two immiscible liquids."  (*See*, *e.g.*, Dkt. No. 18 at p. 4; Dkt. No 18, Ex. 2 at p. 2; Dkt. No. 33 at p. 2).  Reynolds discloses that the wash water and the crude oil are "intimately and thoroughly mixed," *i.e.*, they create an "emulsion," and are then separated in "a conventional crude oil desalter."  (DX5 at 2:5-7, 59-63; *see also* Dkt. No. 40, Tr. at 360:9-361:9).

Thus, Reynolds explicitly teaches that the wash water and the crude oil are "intimately and thoroughly mixed" to create an emulsion.  (DX5 at 2:5-7, 59-63).  Had the Court construed "emulsion," Reynolds' anticipatory disclosures would have been clear.  (Dkt. No. 40, Tr. at 360:9-361:9).  The importance of "emulsion" to the court's Opinion affirms the need to construe the disputed terms and highlights the substantial questions concerning the validity of the Asserted Claims.  *See Novo Nordisk A/S v. Sanofi-Aventis U.S. LLC*, No. 08-1225, 2008 U.S. App. LEXIS 16227 at **6 (Fed. Cir. July 30, 2008) ("At the preliminary injunction stage, however, it is irrelevant whether this case presents greater issues of claim construction or validity--the existence of one or both of these issues is sufficient to justify the district court's decision to deny a preliminary injunction.").

Indeed, Baker's own inventor even admitted: "[i]n every desalter that I've ever seen . . . there's always a mix valve to create the oil/water emulsions that basically give you the good contact of the oil and water phases."  (Dkt. No. 30 at 70:14-71:1).  This is consistent with the prior art teaching that "[c]rude oil desalting is a common emulsion breaking method where the emulsion is first intentionally formed."  (DX14 at 1:31-32).  The formation of an emulsion is fundamental to the desalting process because the "water is intimately mixed with the crude oil to contact the impurities therein, thereby transferring these impurities into the water phase of the emulsion."  (*See*, *e.g.*, DX14 at 1:34-37).  Indeed, the metals removal process disclosed by Reynolds would not even work if an emulsion were not created.  (Dkt. No. 40, Tr. at 361:4-9).[4]

### 3.    The '943 Patent is Obvious in View of the Combination of Petroleum Refining with Strong and/or Hickok.

The Court's Opinion omitted any analysis of *Petroleum Refining*, Nalco's primary reference for its first combination.  Yet *Petroleum Refining* discloses every element of the Asserted Claims aside from the specific acids.  (DX11 at pp. 41-42, 50-51).  *Petroleum Refining* undisputedly discloses:  a refinery desalting process that adds acid to the wash water thereby lowering the pH of the wash water to 6 or below; and that adds the wash water to the crude oil to create an emulsion resolved by electrostatic coalescence.  (*Id.*).  *Petroleum Refining* also teaches the addition of acid to the wash water.  (*Id.* at p. 50).

Baker misled the Court to believe that "the Strong '243 patent teaches the use of carboxylic acid in alcohol solution" (*i.e.*, that Strong does not disclose adding acid to wash

---

[4]    Baker's assertion that Reynolds "teaches away" from the formation of emulsions is incorrect and misleading.  Reynolds explicitly teaches the water-oil emulsion necessary to perform the desalting process.  (DX5 at 2:5-7, 59-63; *see also* Dkt. No. 40, Tr. at 360:9-361:9).  The Reynolds' passage cited by Baker merely refers to maintaining a lower pH for the effective separation of the intentionally formed emulsion.  (DX5 at 3:31-37).  This is consistent with the contemporaneous prior art teachings regarding the proper pH level for effective emulsion separation in the desalting process.  (*See*, *e.g.*, DX11 at p. 50).

water).  (Dkt. No. 35 at p. 9; Dkt. No. 19 at pp. 13-14).  Strong, however, explicitly discloses

adding a carboxylic acid to the wash water:  "acid . . . from source 10 is passed into aqueous

solution mixer 11 along with water from source 12."  (DX13 at Fig. 1, 2:44-46).  The Court's

finding is directly contradicted not only by the Strong reference itself, but by undisputed

testimony:

> Q.     (Baker's Attorney): All right. You also cite the Strong – I think
>               DX13 – Strong patent?
>
> A.     (Nalco expert Robert W. Reynolds): Yes.
>
> Q.     There's no mention of wash water in there, is there?
>
> A.     Yes.
>
> Q.     It is mentioned?
>
> A.     Yes.
>
> Q.     Okay.  Oh, I misread my note on that.  I'm Sorry. . . .

(Dkt. No. 40, Tr. at 388:1-8).

Baker does not dispute that this combination teaches all the elements of the Asserted

Claims.  Instead, Baker disputes whether one of ordinary skill in the art would have combined

*Petroleum Refining* with Hickok and/or Strong.  Yet Nalco demonstrated multiple motivating

factors for combining the references.  In doing so, it went beyond the standard set forth in *KSR*

*Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007).  Nalco showed:

- *Petroleum Refining* teaches removal of impurities including metals from crude oil (which is a hydrocarbon) through the refinery desalting process.  (DX11 at p. 42; Dkt. No. 40, Tr. at 369:6-370:6; DX20 at p. 13).

- *Petroleum Refining* also teaches addition of acid to wash water to lower the pH for effective emulsion separation.  (DX11 at p. 50; Dkt. 40, Tr. at 369:6-370:6; DX20 at p. 13).

- Hickok and Strong both disclose processes for using a carboxylic acid (*e.g.*, lactic, glycolic and malic acids) to remove metals from hydrocarbons.  (DX12 at 2:54-70; DX13 at 1:15-27, 2:21-25; Dkt. No. 40, Tr. at 369:6-370:6; DX20 at p. 13).

- Adding the specific acids identified in the first step of the Asserted Claims – the carboxylic acids disclosed by both Hickok and Strong – to the wash water as taught in *Petroleum Refining* would "predictably improve the metals transfer from hydrocarbon to the water phase" as part of the refinery desalting process.  (Dkt. No. 40, Tr. at 369:6-370:6; DX20 at p. 13).

Contrary to Baker's misleading assertion, Nalco demonstrated that one of ordinary skill in the art would understand that you could combine this known technology according to its established function to achieve a predictable result.  *KSR*, 550 U.S. at 416 ("The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."); (Dkt. 40, Tr. at 378:22-379:3).

### 4.    The '943 Patent is Obvious in View of the Combination of Strong with Hickok and/or Naeger.

Strong discloses adding a carboxylic acid to the wash water to lower the pH to 6 or below in a refinery desalting process where an emulsion is created and resolved.  (DX13 at Fig. 1, 2:21-25, 43-67).  Strong does not resolve the emulsion with electrostatic coalescence, but rather with a countercurrent wash column to separate the phases.  (*Id*. at Fig. 1, 2:60-62).  Naeger discloses, in detail, the prior art refinery desalting process.  (DX14 at 1:7-46).  It states that an electrostatic desalter is typically used to resolve an emulsion as part of the refinery desalting process.  (*Id*. at 1:37-41).  Substituting the electrostatic desalter of Naeger for the countercurrent wash column of Strong is merely using prior art technology according to its established function to achieve a predictable result (*i.e.*, resolution of the emulsion).  *See KSR*, 550 U.S. at 416.

There is no dispute, therefore, that all elements of the Asserted Claim are present in this combination.  (Dkt. No. 35, pp. 9-10).  Nalco also presented evidence regarding the motivation to combine Strong with Naeger.  Nalco showed:

- Strong teaches separating an emulsion into oil and water phases using a countercurrent wash column.  (Ex. D at 2:60-62; Dkt. 40, Tr. at 373:12-25; Ex. F, p. 21).

- Naeger teaches separating an emulsion into oil and water phases using an electrostatic desalter.  (Ex. B at 1:37-46; Dkt. 40, Tr. at 373:12-25; Ex. F, p. 21).

- "So, substituting an electrostatic desalter into the Strong process would predictably yield the result of a lower metals desalted crude oil or hydrocarbon." (Dkt. 40, Tr. at 373:12-25; Ex. F, p. 21).

Indeed, the Reynolds '463 Patent affirms the predictability of this substitution: "the physical separation process is ordinarily to be done in a ***conventional crude oil desalter***, . . . [t]he separation may be done by any separation process, however, and may include ***countercurrent extraction***."  (DX5 at 2:59-65) (emphasis added).

### C.    Nalco Does Not Infringe Because It Adds Additional Steps.

Proper interpretation of the phrase "consisting of," and ultimately the scope of the Asserted Claims, nullifies any prospect that Baker will likely succeed on the merits.  "The phrase 'consisting of' is a term of art in patent law signifying restriction and exclusion, while, in contrast, the term 'comprising' indicates an open-ended construction."  *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1382-83 (Fed. Cir. 2000) (citations omitted); *see also Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1285 (Fed. Cir. 2007).  Thus, "a drafter uses the phrase 'consisting of' to mean 'I claim what follows and nothing else.'" *Vehicular Techs.,* 212 F.3d at 1383.

During prosecution of the '943 Patent, the PTO forced Baker to use "consisting of" instead of "comprising," precluding infringement by a method that adds additional steps.  (DX3 at pp. 2-3).  The Examiner noted that this amendment distinguished the claims over the prior art because it ***"excludes other steps,***" such as "adding a diluent/solvent in the hydrocarbon feed, heating, and flashing to separate into fractions."  (*Id.*) (emphasis added).  Baker is therefore estopped from ascribing any greater meaning to the term.  Proper construction of the term "consisting of" as used in the Asserted Claims would limit their scope to only four steps.  *See*

*Vehicular Techs.,* 212 F.3d at 1381-83.

Baker nonetheless argues that the Asserted Claims cover any additional steps that are part of the "refinery desalting process." (Dkt. 19, p. 10). This contention is flawed on two fronts. First, Baker essentially argues that the preamble of the Asserted Claims limits their scope. As a matter of law, though, "refinery desalting process" does not limit the claim because it merely recites a "purpose or intended use of the invention." *C.R. Bard v. M3 Sys.*, 157 F.3d 1340, 1350 (Fed. Cir. 1998) (a preamble that "simply states the intended use or purpose of the invention . . . does not limit the scope of the claim unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly."). Second, Baker's argument would convert a close ended "consisting of" claim (only four steps) into an open ended "comprising" claim (four steps plus any other undefined steps that are part of the "refinery desalting process"), thereby nullifying the PTO's mandate that Baker replace "comprising" with "consisting of" to avoid the prior art. Moreover, the '943 Patent file history precludes Baker from now arguing that it did not intend to so severely restrict its claim scope before the PTO. *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005) ("It frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.").

The Court found that Nalco's process includes steps in addition to those in the Asserted Claims: "the Nalco process adds a demulsifier to the crude oil, adds a corrosion inhibitor into the wash water and, during the desalting process, heats the crude oil/demulsifier." (Dkt. No. 35 at p. 8). The Court, however, was erroneously persuaded by Baker that Nalco "fails to

distinguish the Nalco method from the Baker method" because "these steps are not original, they are revealed in the standard desalting process."  (*Id.*).

As previously discussed, by using "consisting of," the inventors "claim[ed] what follows and nothing else."  Thus, because Nalco's process has something else (*i.e.*, at least three additional steps), it necessarily cannot infringe.  *See Vehicular Techs.*, 212 F.3d at 1383 ("the term 'consisting of' emphasizes the claim's specific limitation" to the ***enumerated steps***).

### D.    No Irreparable Harm Exists.

Baker failed to prove irreparable harm absent an injunction.  Specifically, Baker's alleged harms are all calculable as money damages – as in most patent cases – and, thus, do not constitute irreparable harm.  *See Nutrition 21*, 930 F.2d at 872.  Not surpisingly, the record presents a quantifiable damages calculation.  Indeed, Baker never explains why money damages would not suffice.

Baker identified only one expected lost sale from one customer, Sunoco (Philadelphia).  (Dkt. No. 39, Tr. at 202:2-204:16; Dkt. No. 40, Tr. at 253:3-254:2; Dkt. No. 19 at p. 19).  Baker's claim that other lost sales will follow is remote and speculative, not imminent.  (*Id.*).  Moreover, Baker's alleged lost sales and loss of market share can be fully compensated monetarily.  (Dkt. No. 40, Tr. at 255:21-257:11).

Baker's primary argument at the time of the hearing rested on speculation that it would suffer price erosion, despite testimony that no price erosion had occurred.  (Dkt. No. 40, Tr. at 262:7-16).  In any event, damages attributable to price erosion are readily calculable and do not constitute irreparable harm.  *See Nutrition 21*, 930 F.2d at 872; (Dkt. No. 40, Tr. at 259:12-19, 262:7-16).  Thus, even assuming Baker would suffer provable price erosion, those damages could be compensated monetarily.

Further, it is undisputed that Sunoco is a sophisticated customer. (Dkt. No. 39, Tr. at 207:25-208:2; Dkt. No. 40, Tr. at 253:3-9).  Baker's assertion that it will lose goodwill or incur harm to its industry reputation is highly speculative and is not likely to occur in this case.  (Dkt. No. 40, Tr. at 255:4-20).  The petroleum refinery industry is a relatively technical field where patents, and the enforcement thereof, are commonplace.  (Dkt. No. 39, Tr. at 218:2-23, Dkt. No. 40, Tr. at 260:6-19).  Loss of goodwill has not occurred and is not likely to occur in this case. (Dkt. No. 40, Tr. at 262:21-264:7).

Finally, Baker cannot recover pull-through damages "on unpatented items that have essentially no functional relationship to the patented invention and that may have been sold with an infringing device only as a matter of convenience or business advantage."  *Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009) (reversing "award of lost-profit damages on pull-through products").  Moreover, even if it could establish such damages, they are readily calculable under established precedent.  *See Rite-Hite*, 56 F.3d at 1549. This case does not warrant the extraordinary relief of a preliminary injunction because it is no different than any other patent case seeking money damages.  (Dkt. No. 40, Tr. at 264:8-17).

## II.    CONCLUSION

For the foregoing reasons, Nalco requests the Court to deny Baker's Motion on Remand for Additional Findings of Fact and Entry of Preliminary Injunction.  A proposed order denying Baker's application for a preliminary injunction is attached hereto as Exhibit 1.  Additionally, Nalco moves this Court to set an expedited claim construction hearing and trial date.

Dated: October 22, 2009              Respectfully submitted,

                                     _____/s/ Jason A. Engel_____
                                     Patricia Kane Schmidt (patricia.schmidt@klgates.com)
                                     Admitted *pro hac vice*
                                     Jason A. Engel (jason.engel@klgates.com)
                                     Admitted *pro hac vice*
                                     K&L GATES LLP
                                     70 West Madison Street, Suite 3100
                                     Chicago, Illinois  60602
                                     Telephone:  (312) 372-1121
                                     Facsimile:  (312) 827-8000

                                     Roderick B. Williams (rick.williams@klgates.com)
                                     Texas Bar No. 21573700
                                     Southern District Bar No. 941503
                                     K&L GATES LLP
                                     111 Congress Avenue, Suite 900
                                     Austin, Texas  78701
                                     Telephone:  (512) 482-6800
                                     Facsimile:  (512) 482-6859

                                     **ATTORNEYS FOR DEFENDANT AND
                                     COUNTERCLAIMANT NALCO COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all counsel of record electronically pursuant to the Federal Rules of Civil Procedure on the 22nd day of October, 2009.

*/s/ Jason A. Engel*

Jason A. Engel
