United States District Court
Southern District of Texas
**ENTERED**
July 18, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NALCO CO., INC. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | CIVIL ACTION NO: 4:09-CV-1885 |
| | § | |
| BAKER HUGHES INC. AND | § | |
| BAKER PETROLITE CORP. | § | |
| | § | |
| *Defendants*. | § | |

# MEMORANDUM AND ORDER

Pending before the Court is Nalco Inc.'s ("Nalco") motion to compel Baker Hughes, Inc., and Baker Petrolite Corp. (collectively "Baker") to produce an email and testimony that Baker claims is protected under the attorney-client privilege. ECF No. 256.[1] The Court held a hearing on July 12, 2017, and ruled on one issue Nalco raised, reserving ruling on two other issues. *See* Order, ECF No. 268.

## I.  BACKGROUND

This is an antitrust case arising from Baker's allegedly fraudulent conduct in obtaining a patent from the U.S. Patent and Trademark Office ("PTO"). Nalco alleges Baker fraudulently obtained the patent and then used it to monopolize the

---

[1] Judge Hoyt referred all matters in this case for ruling pursuant to 28 U.S.C. § 636(b)(1)(A) and all potentially dispositive matters for a report and recommendation pursuant to § 636(b)(1)(B). Order of Referral, ECF No. 259. A magistrate judge has the authority to issue rulings on a non-dispositive discovery dispute. *See DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-CV-1355, 2014 WL 585753, at *1 (S.D. Tex. Feb. 14, 2014) (Harmon, J.) (recognizing a magistrate judge's authority to issue such rulings).

1

relevant market, to mislead this Court in obtaining a preliminary injunction, and to prevent Nalco from competing in the market.

The Parties are in a discovery dispute concerning the scope of attorney-client privilege. Nalco filed a motion to compel after the deposition of Dr. Jerry Weers, one of the inventors of the Baker patent at issue in this litigation. Nalco asks the Court to allow it to resume the deposition of Dr. Weers so that it may continue its examination regarding issues Baker's counsel instructed him not to answer on the basis of attorney-client privilege. Nalco seeks to resume Dr. Weers' deposition to question him about the March 30-31 email thread and his opinions concerning the strength or weakness of the patent at issue.[2]

## II. ANALYSIS

Attorney-client privilege "exists 'to encourage full and frank communication between attorneys and their clients.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, No. H-11-cv-3061, 2013 WL 6002166, at *2 (S.D. Tex. Nov. 12, 2013) (Miller, J.) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982)). The elements of attorney-client privilege are: "(1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding." *SEC v. Microtune, Inc.*, 258 F.R.D. 310, 315 (N.D. Tex. 2009) (citing

---

[2] The Court ruled that Nalco may continue the deposition of Dr. Weers to explore his testimony on whether he had any input into the decision to sue Nalco and to identify the persons who had such input. Order, ECF No. 268.

2

*United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)) (federal common law governs privilege issue when the court has federal question subject-matter jurisdiction). The party asserting the privilege bears the burden to demonstrate how each communication satisfies all the elements of the privilege. *Id.* (citing *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985)).

  The court narrowly construes the privilege to the bounds necessary to protect these principles because the "assertion of privileges inhibits the search for truth." *Id.* (quoting *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004)). The privilege is limited to the disclosures made to an attorney that are "necessary to obtain informed legal advice which might not have been made absent the privilege." *Id.* (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). Therefore, "the privilege does not protect documents and other communications *simply because they result from an attorney-client relationship*." *Id.* (citing *Navigant Consulting*, 220 F.R.D. at 477) (emphasis added).

  This privilege applies in the corporate setting when an employee, on instructions from a superior, communicates with counsel that which is necessary to supply the basis for legal advice. *Upjohn v. United States*, 449 U.S. 383, 394-95 (1981). Communications that reflect counsel's advice to the corporation do not lose their privileged status when shared among corporate employees who share responsibility for the subject matter of the communication. *Baptiste v. Cushman & Wakefield, Inc.,* No. 3-cv-2102, 2004 WL 330235, at *2 (S.D.N.Y Feb. 20, 2004).

3

"Management personnel should be able to discuss the legal advice rendered to them as agents of the corporation." *Weeks v. Samsung Heavy Indus. Co.*, No. 93-cv-4899, 1996 WL 341537, at *4 (N.D. Ill. June 20, 1996).

The privilege presumptively protects from discovery the "specific *communications* between client and counsel, not the relevant underlying facts, data or information." *Advanced Cardiovascular Sys., Inc. v. C.R. Bard, Inc.*, 144 F.R.D. 372, 374 (N.D. Cal. 1992) (emphasis in original). The privilege does not protect a client's knowledge of relevant facts, regardless of whether he learned the facts from counsel. *Baptiste*, 2004 WL 330235, at *1.

**A. The March 30-31 Email Chain Contains A Privileged Communication**

In discovery, Baker produced a March 30-31, 2008, email chain between two non-lawyer employees of Baker Petrolite, consisting of four emails. The emails were between Dr. Weers, one of the inventors of the patent at issue, and Ralph Naverrete, the Business Coordinator. No lawyer was copied on the email. Resp. Mot. Compel, Ex. 1, ECF. No. 264-3. According to Baker, both Dr. Weers and Mr. Naverrete share responsibility for the patent at issue. During Dr. Weers' deposition, Nalco's counsel questioned him about this email chain. Baker's counsel instructed him not to answer certain questions about the email and ultimately clawed back the email on the basis of attorney-client privilege.

Baker claims that the attorney-client privilege protects the email chain because the two employees were seeking legal advice and sharing legal advice they

4

had recently received. Resp. Mot. Compel, p. 4-8, ECF No. 264. Baker has submitted a proposed redacted version of the email chain. ECF No. 270. The Court finds that the attorney-client privilege protects one of the redacted sections of the email, but not the other two.

Communications between employees may be privileged in two circumstances. First, communications may be privileged when a corporate client shares information with non-attorney employees "to relay information requested by attorneys." *OneBeacon Ins. Co.*, 2013 WL 6002166, at *3 (quoting *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005)); *Adams v. Gateway, Inc.*, No. 2:02-CV-106, 2003 WL 23787856, at *11 (D. Utah Dec. 30, 2003) (noting that a document that "reveals the requests and directions of counsel" is privileged).

Second, communications between non-attorney corporate employees may be privileged when they were made "for the purpose of securing legal advice." *Adams*, 2003 WL 23787856, at *11; *Cuno, Inc. v. Pall Corp*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988). "[S]o long as the information is relayed for the purpose of obtaining legal counsel and it meets the other requirements for maintaining privilege, then even if an attorney does not author or directly receive the communication it is still protected." *OneBeacon Ins. Co.*, 2013 WL 6002166, at *3 (quoting *Apotex*, 232 F.R.D. at 479).

5

When the communication involves a document, for the court to find that the attorney-client privilege applies, the court must inspect the document and find that the primary purpose of the communication was to secure legal advice. *Adams*, 2003 WL 23787856, at *11; *Cuno*, 121 F.R.D. at 203; *accord In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759-60 (D.C. Cir. 2014) (rejecting the sole primary purpose test and finding that a party can claim the attorney-client privilege when the "obtaining or providing legal advice [was] *a* primary purpose of the communication, meaning one of the significant purposes of the communication" (emphasis in original)). "For a communication between non-attorney employees to be held privileged, it must be 'apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice . . . ." *Adams*, 2003 WL 23787856, at *11 (A document between non-attorney employees "must reflect its integration into the legal advice communication chain to be eligible for attorney-client privilege."); *Cuno*, 121 F.R.D. at 203 (same). If not, the privilege is denied. *Adams*, 2003 WL 23787856, at *11; *Cuno*, 121 F.R.D. at 203.

A party can prove that the purpose of a communication was to seek legal advice by offering evidence that the communication was relayed to an attorney. *See Prowess, Inc. v. RaySearch Labs. AB*, No. 11-cv-1357, 2013 WL 1856348, at *4 (D. Md. Apr. 30, 2013) ("communication may only be attorney-client privileged if those communications were transmitted to attorneys"). Without this evidence,

the rationale for protecting full and frank communications between attorneys and their client is lacking. *Id.*

Baker claims that three of the four emails contain attorney-client privileged information. The Court will discuss the 7:57 a.m., 12:55 p.m., and 3:38 p.m., emails in turn.

### 1. The attorney-client privilege protects the 7:57 a.m. email

The 7:57 a.m. email reflects that Dr. Weers told Ralph Navarrete about a specific request he made for legal advice to an attorney regarding the patent. The attorney-client privilege protects this exchange because, on its face, the email reflects that Dr. Weers communicated that he sought legal advice from a lawyer. *See Adams*, 2003 WL 23787856, at *11. Dr. Weers and Mr. Navarrete, both members of Baker management, share responsibility for the patent and should be able to discuss legal advice rendered to them or that they sought as agents of the corporation. *Weeks*, 1996 WL 341537, at *4. The Court finds that Baker has satisfied its burden of proving that this communication is privileged and the proposed redacted version of this section of the email chain is sufficient.

### 2. Baker has not met its burden to show that the 12:55 p.m. email is privileged

In the 12:55 p.m. email, Baker seeks to redact a question from Mr. Navarrete to Dr. Weers about the effect of an expired patent on the enforceability of Baker's patent. In the email, Mr. Navarrete does not ask Dr. Weers to forward this question to counsel or state that that Mr. Navarrete intended to do so. Baker submitted

Mr. Navarrete's affidavit in support of its position that the communication was privileged. Mr. Navarrete stated that he responded to Dr. Weers' email "with a question I had for counsel concerning the scope of the 943 patent." Resp. Mot. Compel, Ex. 3 ¶ 3, ECF No. 264-5.

Nothing in the email chain indicates that the question was to be proposed to counsel. *See, e.g., Cuno,* 121 F.R.D. at 203 (the purpose of obtaining legal services must be present when an attorney is neither the sender nor the recipient of the communication). Even assuming Mr. Navarrete had such an unexpressed intent, Baker has not submitted evidence that the substance of this communication was in fact conveyed to an attorney. *See Prowess, Inc.*, 2013 WL 1856348, at *4. "This Court will not extend the attorney-client privilege beyond its purpose to cover communications that do not clearly involve an attorney or the facilitation of legal services." *See id*.

Therefore, Baker has not met its burden that this communication was made for the purposes of securing legal advice. The Court finds that this email is not privileged.

### 3. Baker has not met its burden to show that the 3:38 p.m. email is privileged

The most difficult analysis occurs in the last of the three emails. In the 3:38 p.m. email, Baker seeks to redact three sentences regarding Dr. Weers' opinions on the impact of the patent on Nalco's proposed business practice based

on prior art and the claims. Baker claims that these passages are based on communications with counsel and consequently are privileged.

The face of the email reflects only that these communications reflect Dr. Weers' opinions based on his knowledge of prior art, the claims, and industry practices. Assuming that the affidavit is sufficient to show that Dr. Weers was sharing communication he had with counsel about the then-pending patent application and relay his understanding of the enforceability of the patent based on those communications with counsel, they would be privileged.[3] *See Baptiste*, 2004 WL 330235, at *2 (finding privileged an email addressed to another employee that conveyed information and advice given by counsel); *Advanced Cardiovascular*, 144 F.R.D. at 375 (recognizing that a patent application necessarily involves privileged communication between an inventor and the patent attorney). However, Baker waived its right to claim the privilege when it submitted its proposed redactions.

"The attorney-client privilege will be waived if the holder of the privilege discloses or consents to disclosure of any significant part of the communication to a third party or stranger to the attorney-client relationship." *Baptiste*, 2004 WL 330235, at *2 (citing *In re Grand Jury Proceedings*, No. 11-cv-189, 2001 WL

---

[3] Dr. Weers' affidavit merely says that his communications were "informed by" his communications with counsel. It does not state that he was actually communicating counsel's advice or strategy. It is doubtful that this affidavit is sufficient meet Baker's burden of establishing the communications were privileged. *See, e.g., Weeks*, 1996 WL 341537, at *5 (finding that asserting party had met its burden when the party making the statement declared that "he received advice from counsel regarding the legal obligations of defendants with respect to plaintiff . . . [and] summarized that advice and relayed it to his superiors").

1167497, at *7 (S.D.N.Y. Oct. 3, 2001)). "[T]he party asserting the attorney-client privilege [] has the burden to prove that waiver did not occur." *RLIS, Inc. v. Cerner Corp.*, No. 3:12-CV-209, 2014 WL 12599509, at *1 (S.D. Tex. Dec. 24, 2014) (Costa, J.). Under Federal Rule of Evidence 502(a), when a party makes an intentional waiver in a federal proceeding, the Court can make undisclosed communications that concerns the same subject matter available if it ought in fairness to be considered together. Fed. R. Evid. 502(a); *First Am. CoreLogic, Inc. v. Fiserv, Inc.*, No. 2:10-CV-132, 2010 WL 4975566, at *3 (E.D. Tex. Dec. 2, 2010).

In submitting its proposed redactions to the Court, Baker did not redact the second sentence of the email; it only redacted the first sentence in the email, which discusses the impact of the pending-patent application on Nalco, and the third and fourth sentences, which also discuss whether Nalco can use certain chemicals and processes in light of the pending-patent application. The second sentence discusses prior art, the strategy Baker used to distinguish the prior art in the pending application, and the PTO examiner's apparent response to that argument. The second sentence, on its face and in light of the affidavit, appears to convey information that counsel had previously communicated to Dr. Weers, yet Baker is willing to disclose this sentence to Nalco, which constitutes a waiver of any attorney-client privilege. *See OneBeacon Ins.*, 2013 WL 6002166, at *2 (recognizing that the attorney-client privilege only applies if it has not been

waived). The fact that the application was pending and certain information was publicly available does not negate this disclosure of counsel's strategy and counsel's interpretation of the PTO's apparent response that was communicated to Dr. Weers.

Because the other three sentences in the email concern the same subject matter, but specifically how it relates to Nalco, they should be considered together with the unredacted second sentence. Baker should not be allowed to pick and choose which privileged communications to disclose to obtain a tactical advantage over Nalco. *See* Fed. R. Evid. 502(a); *Milwaukee Elec. Tool Corp., v. Chevron N. Am. Inc.*, No. 14-CV-1289, 2017 WL 2929522, at *1 (E.D. Wis. July 10, 2017) ("The scope of waiver should generally be construed narrowly in patent cases, but it should also be informed by notions of fairness and a concern with stopping a party from deriving a tactical advantage through selective disclosure.").

Therefore, the Court finds that Baker has not met its burden that this email is privileged.

### B. Dr. Weers' Opinions on the Strength of the Patent Are Protected

Nalco also seeks to ask Dr. Weers questions regarding his opinion on the strength of the patent. Nalco pursued this line of questioning based on another email in which Dr. Weers stated that he thought that Nalco was planning to use glycolic acid alone despite the fact that the patent included this acid. Dr. Weers opined that Nalco thought that this was the weakest claim in Baker's patent. Mot.

11

Comp., p. 9, ECF 256. Counsel for Nalco asked Dr. Weers whether he thought that this was the "weakest link in the patent application." *Id.* Baker objected and instructed the witness not to answer. Nalco then asked Dr. Weers about his views of the strength and weakness of the claims in the patent application. Again, Baker's counsel objected and instructed the witness not to answer.

Baker asserts this line of questioning calls for attorney-client privileged information and again relied on Dr. Weers' affidavit in support. In his affidavit, Dr. Weers averred that any opinions he has on the strength or weakness of the patent claims is based on his discussions with counsel. Resp. to Mot. Comp., ¶ 5, ECF 264-4.

The patent application process involves a dialogue between attorney and inventor. *Advanced Cardiovascular*, 144 F.R.D. at 375. The inventor brings to the dialogue technical information about the invention, although he may have some limited knowledge of legal requirements in the patent area. *Id.* In contrast, the lawyer brings "an understanding of the criteria used by the PTO in deciding whether to issue patents and of the legal principles or considerations that come into play when parties seek to enforce a patent against an alleged infringer or to challenge a patent's validity." *Id.* "The inventor looks to the lawyer to understand the procedural and substantive legal requirements (e.g., the scope and character of the duty of disclosure) for issuance of a patent, as well as the criteria the law recognizes as relevant in enforcement and validity litigation." *Id.* at 376-77. The

inventor and the lawyer make judgments and determinations as a team as to what to include in the patent application and what is material for the required disclosures; these communications are privileged. *Id.*

Questions about Dr. Weers' opinions on the strength or weakness of the case, in essence seek his opinions as to whether the PTO will grant the patent application. The Court finds that any opinions Dr. Weers has regarding the strength or weakness of the claims are based on his discussion with counsel about the patent process and what is necessary to satisfy the PTO. Therefore, the attorney-client privilege precludes Nalco from obtaining discovery on this line of questioning. *See id.* (denying motion to compel "to the extent that it would reach private communications between inventor and counsel made in connection with the preparation of the original patent application or in connection with the reexamination").

Nalco argues that Baker waived its opportunity to claim that Dr. Weers' opinion on the strength of the patent is privileged. Mot. Compel, pp. 13-14, ECF No. 256. Nalco argued at the hearing that Baker waived the privilege when Dr. Weers testified at the injunction hearing regarding why the invention was novel. This testimony does not constitute a waiver, because an inventor can provide his opinion on why an invention is novel without disclosing his conversations with counsel. *See Advanced Cardiovascular*, 144 F.R.D. at 377-78 (recognizing that an inventor can provide information about a patent that does not

disclose attorney-client privileged communication). During the hearing, the Court stated that this opinion was not sufficient to create a waiver and Nalco's counsel stated that it would provide other record references to support its argument. Counsel failed to provide the Court with those references. The Court will not sift through the lengthy preliminary injunction hearing transcript to find where Dr. Weers might have provided an opinion that would constitute a waiver. *See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 23 (1st Cir. 2003) (evaluating whether a party has waived a privilege "demands a fastidious sifting of the facts and a careful weighing of the circumstances"); *United States v. Adkinson*, 135 F.3d 1363, 1378-80 (11th Cir. 1998) (holding that it is not the court's duty to sift through the record for evidence that supports a party's contentions).

During the continuation of the deposition of Dr. Weers, to the extent that it has not already done so, Nalco can explore Dr. Weers' knowledge of facts, including his understanding of the terms of the patent, the existence of prior art, and how this prior art compares to the patent. Dr. Weers' knowledge of facts is not protected, regardless of the source of that knowledge. *See id.* at 378-79 (granting "motion to compel to the extent that it asks us to order the inventors to answer questions about their understanding of terms used in the patent claims").

### III. CONCLUSION

The Court **GRANTS** Nalco's motion to compel production of the March 30-31, 2008, email chain, except for the three sentences contained in Baker's proposed redaction to the 7:57 a.m. email. The Court **DENIES** Nalco's motion to compel answers to Dr. Weers' testimony regarding his opinion of the strength or weakness of the patent. Nalco is permitted to ask, to the extent it has not already done so, factual questions regarding Dr. Weers' knowledge of facts, including his understanding of the terms of the patent, the existence of prior art, and how this prior art compares to the patent.

Signed on July 18, 2017, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge